**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

QUANTIX LIQUID
TRANSPORTATION, INC.,

Plaintiff,

v.

ALEJANDRO GIL, GIL'S
TRANSPORTATION SERVICES, LLC
A/K/A GIL'S TRANSPORT, LLC, AND
SINDLE TRUCKING, LLC,

Defendants.

Case No. 25-cv-4637

Judge Mary M. Rowland

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are Defendant Alejandro Gil ("Gil"), Gil's Transportation Services, LLC a/k/a Gil's Transport, LLC's ("Gil's Transport") (collectively the "Gil Defendants"), and Sindle Trucking, LLC's ("Sindle" or "Sindle Trucking") motions to dismiss the Second Amended Complaint. [66]; [68]. All Defendants move pursuant to Rule 12(b)(6) and Sindle Trucking additionally moves pursuant to Rule 12(b)(2). For the reasons stated herein, Sindle Trucking's motion [68] is granted, and the Gil Defendants' motion [66] is granted in part and denied in part.

## I. Background

The following factual allegations taken from the Second Amended Complaint [64] are accepted as true for the purpose of resolving the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Defendant Alejandro Gil is the sole owner of Defendant Gil's Transport, a

1

trucking business based in South Houston, Texas. [64] ¶ 8. Gil's Transport has been an independent contractor of Plaintiff Quantix for several years. *Id.* ¶ 8. On or around November 12, 2024, Gil's Transport and Quantix signed their last renewed independent contractor agreement (the "IC Agreement").[1] *Id.* The IC Agreement set forth the terms of the relationship and obligations between the Gil Defendants and Quantix. Under the IC Agreement, Plaintiff agreed to provide the Gil Defendants insurance and possible trucking routes while the Gil Defendants agreed to provide Quantix with the use of Gil's Transport's fleet of trucks and drivers to service the routes the Gil Defendants accepted from Quantix. IC Agreement § 1. The IC Agreement does not contain a non-solicitation, non-competition, or non-disparagement provision, although it does include a confidentiality provision. *Id.* § 25.1. After becoming aware of multiple instances of Gil's Transport's alleged misuse of Quantix's information, Quantix issued a written Notice of Termination on or around April 23, 2025 pursuant to which the relationship between Gil's Transport and Quantix would wind down and complete the IC Agreement on May 7, 2025. [64] ¶ 11. Gil stopped running trucks for Quantix on April 27, 2025; ahead of the May 7, 2025 wind down date. *Id.* ¶ 25.

Quantix contends Gil breached the IC Agreement and abused Quantix's resources by engaging in various prohibited conduct. Beginning at least in March

---

[1] When deciding a motion to dismiss, "a court may consider . . . documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Although the IC Agreement is not attached to the Second Amended Complaint, Quantix cites to the Agreement at length, including an allegation that the Agreement was attached. *See* [64] ¶ 7. Thus, the Court will consider the IC Agreement, which was filed with the initial Complaint. [1] at 17–55.

2

2025, Gil solicited Quantix customers to move their business with him from Quantix to another business named Sindle Trucking[2], including by sending emails to customers disparaging Quantix to encourage them to move their business with him to Sindle, and inviting customers out to eat to inform them of his future plans to separate from Quantix and move to Sindle. [64] at 14–17, 21. Additionally, Gil filmed Quantix driver training sessions with his commentary about the drivers being "unqualified" and sent the videos to Quantix customers to disparage the company. *Id.* ¶ 24. Gil also sent to his personal email address Quantix's company information, including lists of Quantix employed drivers and Microsoft Word versions of contractor agreements developed by Quantix. *Id.* ¶¶ 18, 20. Using his password-protected access to driver lists and contracts, Gil also solicited at least one Quantix employee driver to work with him at Sindle. *Id.* ¶ 23. Gil emailed Quantix's contractor agreements, such as the 3P-ICOA, to Sindle. *Id.* ¶ 20. Finally, Gil "accepted loads within Quantix's load board system only to then fail to dispatch the loads until the last minute" to provide inside knowledge of the loads to Sindle Trucking. *Id.* ¶ 19.

Gil's Transport and Gil have used Quantix's company documents to duplicate Quantix's operations to the benefit of Sindle. *Id.* ¶ 22. For example, Sindle allegedly has pursued and contracted with a host of former Quantix drivers that were either under contract with or otherwise part of Quantix's network. *Id.* Additionally, Sindle

---

[2] Sindle Trucking is an Arkansas limited liability company and its sole member is a resident of Arkansas. [64] ¶ 4; [69-1] ¶ 4 (Declaration of Neil Voorhees). Its sole office and principal place of business is in Arkansas. [64] ¶ 4; [69-1] ¶ 5 (Voorhees Decl.). Sindle has no customers in Illinois, does not employ any persons in Illinois, does not advertise in Illinois, and does not maintain any registration or licenses in Illinois. [69-1] ¶¶ 7–9, 11. Less than five percent of Sindle Trucks drive through Illinois. *Id.* ¶ 10.

3

has secured lanes in areas in which the company previously had no business due to Gil's breaches and confidential information he shared. *Id.*

Quantix brought this seven count suit against the Gil Defendants and Sindle Trucking. Counts I through IV against the Gil Defendants allege breach of several IC Agreement provisions, breach of fiduciary duty, misappropriation of trade secrets in violation of the Illinois Uniform Trade Secrets Act ("ITSA"), 765 ILCS 1065, and tortious interference with business relationship. Counts V and VI against Sindle Trucking allege tortious interference with business relationship as well as aiding and abetting. Count VII against all Defendants alleges civil conspiracy. Before the Court now are Defendants' motions to dismiss. [66]; [68].

## II.  Standards

### a.  Rule 12(b)(2)

Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff need not allege facts concerning personal jurisdiction in her complaint, but "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court rules on a Rule 12(b)(2) motion based upon written submissions without holding an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Curry, LLC*, 949 F.3d at 392–93; *GCIU-*

4

*Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where, as here, a defendant submits an affidavit regarding personal jurisdiction, this Court accepts as true any facts in the affidavit that do not conflict with the complaint or the plaintiff's submissions. *Curry*, 949 F.3d at 393. "Under the prima facie standard, the plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor." *Purdue Rsch. Found.*, 338 F.3d at 783.

A federal court sitting in diversity has personal jurisdiction over a defendant if the state in which the court sits would have such jurisdiction. *Kipp v. Ski Enter. Co. of Wis.*, 783 F.3d 365, 697 (7th Cir. 2015). Illinois, the forum state, has a long-arm statute that grants jurisdiction coextensive with the U.S. Constitution's Due Process Clause. *See Kipp*, 783 F.3d at 697 (Illinois). Accordingly, the state and federal inquires merge and personal jurisdiction exists if it comports with federal due process. *Id.*

### b. Rule 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all

5

well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

#### a. Sindle Trucking's 12(b)(2) Motion

Sindle Trucking moves to dismiss the Second Amended Complaint under Rule 12(b)(2). [69] at 5–9. Sindle Trucking argues the Court lacks general and specific personal jurisdiction over them in connection with Quantix's asserted claims. As explained herein, the Court agrees it lacks personal jurisdiction and Defendant Sindle Trucking is dismissed.

Absent consent, courts recognize two types of personal jurisdiction: general or

specific jurisdiction. *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 722 (7th Cir. 2024). Plaintiff does not address and therefore concedes that this Court lacks general jurisdiction over Sindle Trucking. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court."). Thus, the only issue before this Court is whether specific jurisdiction exists.

Specific jurisdiction over an out-of-state defendant "depends on an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). A plaintiff must prove three "essential requirements" to establish specific jurisdiction: (1) "the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state," (2) the "alleged injury must have arisen out of the defendant's forum-related activities," and (3) "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (citations omitted).

### i.     Purposeful Availment

Where, as here, the plaintiff's claims are for intentional torts, the purposeful availment inquiry focuses on whether the conduct underlying the claims was

7

purposely directed at the forum state. *Tamburo*, 601 F.3d at 702. In such cases, courts look to whether the plaintiff has shown "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). This is known as the *Calder* test.

The *Calder* assessment is focused on the acts and activities of the defendant. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The relationship between the defendant and the forum "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in both opinions); *Rogers v. City of Hobart, Ind.*, 996 F.3d 812, 819 (7th Cir. 2021) (same). Specific personal jurisdiction cannot arise solely from the actions of a plaintiff or third parties. *Walden*, 571 U.S. at 284. Additionally, a defendant's minimum contacts must be with the forum itself and not merely with a person who resides there or an entity at home there. *Id.* at 285. In other words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.

Here Plaintiff asserts personal jurisdiction is established because Sindle Trucking participated in a conspiracy to raid Quantix, an Illinois-based entity, and interfered with the IC Agreement, an Illinois-based contract. [74] at 5; *see also* [64] ¶ 89 (Sindle "directed its misconduct towards an Illinois entity, Quantix, and an

8

Illinois contract, the IC Agreement"). Furthermore, Plaintiff alleges Sindle damaged Quantix's operations, including customer relationships; and solicited drivers and confidential information. [74] at 5; *see also* [64] ¶¶ 14–15 (Gil solicited Quantix customers at the behest of or in coordination with Sindle); ¶ 19 (Sindle used knowledge of canceled loads to acquire information about Quantix's customers); ¶ 22 (Sindle has pursued and contracted with drivers who were either under contract with Quantix or a part of Quantix's network as well as secured lanes in new-to-Sindle territory); ¶¶ 91, 98 (Sindle enticed the Gil Defendants to poach Quantix's customers and employees). Quantix argues this alleged misconduct supports a finding of personal jurisdiction because these customer relationships, drivers, and confidential information have a "home base" in Illinois.[3] [74] at 5.

In sum, Quantix contends specific jurisdiction arises only from the foreseeability of its and third parties' connections to Illinois. Quantix does not allege any connections between Sindle Trucking and Illinois: no allegations of solicitation of drivers or customers who work in or are otherwise located in Illinois; no allegations of confidential information transmitted from Illinois, and no allegations of any communications to, from, or in Illinois. Quantix has not alleged a single fact from which this Court can infer that Sindle took any purposeful action of any kind in or

---

[3] Quantix does not allege any of the customers or drivers Sindle Trucking allegedly solicited are or were located in Illinois. *See* [64]. To the extent Plaintiff's response brief can be construed as asserting as much, *(*[74] at 5 ("[Sindle] cause[d] damages to operations in Illinois (including customer relationships established in Illinois) . . . and solicit[d] drivers and confidential information, both of which have a 'home base' in Illinois")), the Court considers Quantix's arguments from those filings, but it does not consider any new facts presented within the filings. It is axiomatic that complaints cannot be amended through response briefs. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("the complaint may not be amended by the briefs in opposition to a motion to dismiss").

9

directed at Illinois. Although Sindle's conduct may have "targeted" Quantix, that conduct cannot be said to "target" Illinois. These are precisely the connections deemed insufficient by *Walden* and its progeny.[4]

Plaintiff's case law is unavailing. *Stearney v. Harman*, 586 F. Supp. 2d 901 (N.D. Ill. 2008), which has never been cited by any other court, misapplied the *Calder* test and found the defendants, who were located in and committed the alleged interfering acts in Indiana alone, could reasonably foresee being sued in Illinois, where the interfered-with relationship was centered. 586 F. Supp. 2d at 904–5. But "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative." *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (internal citation omitted) (quoting *Walden*, 571 U.S. at 285). *Guaranteed Rate, Inc. v. Rorvig*, 2022 WL 4182436 (N.D. Ill. Sept. 13, 2022) is factually distinguishable because the plaintiff there alleged the defendants purposefully directed its activities at Illinois residents, including solicitation of employees who resided in Illinois who primarily worked on Illinois business, advertisements in Illinois, and business transactions in Illinois. 2022 WL 4182436, at *4. Quantix makes no similar averments.

Considering the record in its entirety and assessing all evidence, Plaintiff has failed to show Defendant Sindle Trucking has sufficient minimum contacts in the

---

[4] Plaintiff abandons the "closely related" non-signatory doctrine implied in the pleadings. [64] ¶ 90 n.1 (citing *Walls v. VRE Chicago Eleven, LLC*, 344 F. Supp. 932 (N.D. Ill. 2018). Thus, this argument is waived. *Alioto*, 651 F.3d at 721.

forum. Haling Sindle into court in Illinois would therefore violate due process. Accordingly, Sindle's 12(b)(2) motion to dismiss is granted. [68]. Because the Court dismisses Sindle for lack of personal jurisdiction, the Court does not need to address Sindle's alternative argument that the Second Amended Complaint fails to state claim against it.

### ii.     Request for Jurisdictional Discovery

Quantix requests it be allowed to conduct jurisdictional discovery if the Court finds that it has not made out a *prima facie* case of personal jurisdiction. But a plaintiff must be able to establish a "colorable" showing of personal jurisdiction before discovery should be permitted. *See Rebel Hosp. LLC v. Rebel Hosp. LLC*, 2022 WL 797035, at *6 (N.D. Ill. Mar. 16, 2022); *Seo v. H Mart Inc.*, 2020 WL 5547913, at *4 (N.D. Ill. Sept. 16, 2020).[5] A "plaintiff may not rely on 'bare,' 'attenuated,' or 'unsupported assertions' of jurisdiction to justify discovery." *Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, 2018 WL 3770085, at *2 (N.D. Ill. Aug. 9, 2018). "Put differently, a plaintiff seeking jurisdictional discovery must advance 'proof to a reasonable probability' of the facts necessary to establish federal jurisdiction." *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 971 (N.D. Ill. 2015) (quoting *Anthony v. Sec. Pac. Pin. Servs., Inc.*, 75 F.3d 311, 316 (7th Cir. 1996)).

Plaintiff's request for jurisdictional discovery is denied because it has not made

---

[5] District courts in the Seventh Circuit evaluating requests for jurisdictional discovery frequently rely on *Central States, Southeast and Southwest Areas Pension Fund*, which cites *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997), but adds the term "prima facie" to this standard without explanation. 230 F.3d at 946. Since a "prima facie" showing based on the written submissions is sufficient to establish personal jurisdiction, it seems illogical to apply this standard to a request for discovery. The Court will apply a "colorable" standard to requests for jurisdictional discovery.

out a colorable case of personal jurisdiction over Sindle Trucking. Indeed, Quantix does not allege *any* contacts between Sindle and Illinois. Quantix's argument that "there is a high likelihood that some clients and/or drivers [Quantix lost due to Sindle's conduct] are domiciled in Illinois" ([74] at 6) is based on mere conjecture and does not support discovery into Sindle's suit-related contacts with Illinois.[6] *See Aoty Sports, Inc. v. Michael Domesick & AbMill, LLC*, 2024 WL 7006412, at *6 (N.D. Ill. Oct. 31, 2024) (denying jurisdictional discovery where plaintiff failed to raise any non-speculative basis for believing that defendants have the sort of contacts with Illinois that might support the exercise of personal jurisdiction over them). Additionally, Quantix does not articulate what discovery it seeks, why such discovery is necessary, or how such discovery could advance its arguments. The Court denies Quantix request for jurisdictional discovery.

### b. Gil Defendants' 12(b)(6) Motion

The Gil Defendants move to dismiss the Second Amended Complaint under Rule 12(b)(6). [67]. They contend Quantix fails to state a claim for breach of contract, breach of fiduciary duty, misappropriation under ITSA, tortious interference, and civil conspiracy. Additionally, the Gil Defendants argue Plaintiff's claims are preempted by ITSA. The Court addresses each argument in turn.

### i. Breach of Contract

Quantix alleges Defendants breached the following provisions of the IC Agreement: (a) Section 25.1 protecting Quantix's confidential matters and trade

---

[6] That less than five percent of Sindle's trucks pass through Illinois does not help Plaintiff. [69-1] ¶ 10 (Voorhees Decl.). This conduct alone is unrelated to the alleged torts and Quantix's purported injuries.

secrets; (b) Section 9.8 requiring compliance with shipment specifications dictated by customers, shippers, and others; (c) Section 10.1 allocating payment of maintenance costs and road tolls; (d) Section 13.3 mandating Gil Transport return trailing equipment to Quantix at the termination of the parties' relationship; (e) Sections 2.3 and 17.2 governing the display of Quantix identification on equipment; and (f) Section 14 relating to reports of crashing or damages incurred during Gil Transport's operations under the Agreement. [64] ¶¶ 29–49. To state a claim for breach of contract under Illinois law, a plaintiff must plead: (1) a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). The Gil Defendants argue Quantix fails to state a claim as to any of these provisions of the IC Agreement. [67] at 4–10.

### 1.  IC Agreement § 25.1 - Confidentiality

Section 25.1 of the IC Agreement seeks to protect information Quantix deems confidential and trade secrets. Relevant here, pursuant to Section 25.1:

> [Gil Transport] acknowledges that any list of [Quantix]'s Customers, including non-public Customer related information, is a valuable, special, and unique asset of the business of [Quantix]. [Gil's Transport] agrees that during and after the term of this Agreement [Gil's Transport], including [Gil's Transport]'s workers, (i) will not disclose the list of [Quantix's] customers or any part thereof to any third party for any reason without [Quantix's] prior written consent.

Furthermore, under Section 25.1, Gil Transport also agreed and acknowledged it

> (ii) will preserve as "Confidential Matters" all trade secrets, know how and information related to [Quantix]'s business, forms, processes developments, sales and promotional systems, prices and operations; and (iii) will regard the Confidential Matters as the sole property of [Quantix], and will not publish, disclose or disseminate the same to

13

others without the written consent of [Quantix].

Courts applying Illinois law "will enforce [confidentiality] agreements only when the information sought to be protected is actually confidential and reasonable efforts were made to keep it confidential." *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007).

The Gil Defendants contend Quantix's allegations are conclusory and do not identify the steps necessary to keep the purported confidential information private. [67] at 5–6. The Court does not agree. *See* [79] at 2–3 (paragraph-by-paragraph evaluation). Plaintiff pleads the Gil Defendants breached the confidentiality provision by Gil emailing Quantix-developed contractor agreements[7], Quantix driver and employee lists, and lists of Quantix equipment to Sindle. [64] ¶¶ 18, 20, 22, 74, 99. Additionally, Quantix alleges the Gil Defendants accepted certain customer loads to gain confidential information about the loads, which they in turn shared with Sindle to solicit Quantix's customers. *Id.* ¶¶ 19, 34. These are more than threadbare recitals sufficient to survive a motion to dismiss. *Cf. Stericycle, Inc. v. Carney*, 2013 WL 3671288, at *6 (N.D. Ill. July 12, 2013) (holding implausible sole allegation "[u]pon information and belief, . . . [defendant] has been using [plaintiff's] confidential information to advise [competitor] concerning [plaintiff's] business in order to assist and bolster [competitor] in its efforts to compete with [plaintiff] for

---

[7] To the extent these agreements are available on the public internet, as at least one version is, allegations that the Gil Defendants emailed Quantix-developed contracts cannot support a claim for breach of § 25.1. *BondPro Corp. v. Siemens Power Generation, Inc.*, 463, F.3d 702, 706 (7th Cir. 2006) ("A trade secret that becomes public knowledge is no longer a trade secret."). Construing the complaint in the light most favorable to Quantix, as the Court must on a motion to dismiss, Plaintiff's allegations are not necessarily limited only to publicly available agreements. Defendants may test this evidence in discovery.

14

that business").

Quantix also alleges it took steps to guard the secrecy of its confidential information. "[W]hether Plaintiff took sufficient steps to protect its trade secrets, . . . is . . . a factual inquiry that is unfitting at the motion-to-dismiss stage." *Liion, LLC v. Vertiv Grp. Corp.*, 2019 WL 1281977, at \*2 (N.D. Ill. Mar. 20, 2019). Quantix need only allege "facts making it plausible that the relevant information was the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." *Switchboard Apparatus, Inc. v. Wolfram*, 2021 WL 2311969, at \*4 (N.D. Ill. June 7, 2021) (internal quotations omitted). Here, Quantix alleges it required passwords to access its computer systems, load boards, and customer information; and required the Gil Defendants to sign the confidentiality provision as part of the IC Agreement. [64] ¶ 9. Access is shut off to confidential information for those outside the Quantix network and without passwords. *Id.* ¶ 72. This is sufficient at this stage of the litigation. *See First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 842 (C.D. Ill. 2014) ("Nondisclosure agreements, such as the confidentiality agreement that [the defendant] signed, are important evidence of reasonable steps [to ensure information remains secret].”). For now, Defendants' critique is premature. Quantix has sufficiently stated a claim for breach of Section 25.1.

### 2. IC Agreement § 9.8 – Customer Specifications

Section 9.8 provides: "[Gil Transport] agrees to comply with all specifications dictated by shippers, consignees, consignors, brokers, logistics companies, freight forwarders, other carriers, or other customers . . . communicated to [Gil Transport] with which [Gil's Transport] may safely comply without violating Applicable Law or

15

[Quantix]'s Policies and Procedures…." The Gil Defendants argue "customer specifications" under Section 9.8 does not include timing of the shipment and even if it did, Plaintiff does not allege any missed shipments. First, Defendants erroneously limit this provision to *truck* specifications when the plain terms of the Agreement contain no such constraint. *La Salle Nat. Bank v. City of Warrenville*, 434 N.E.2d 549, 551 (Ill. App. Ct. 2d Dist. 1982) (explaining a court will not add another term about which an agreement is silent). The Court disagrees with this narrow interpretation. Second, Quantix alleges the Gil Defendants breached Section 9.8 by accepting "loads within Quantix's load board system only to then fail to dispatch the loads until the last minute." [64] ¶¶ 19, 34. But Plaintiff does not allege Defendants missed loads. Instead, Quantix proffers allegations about the Gil Defendants' hypothetical conduct: that they "*could* position Quantix where it had to cancel loads" or that they "*should* have taken on loads from Quantix," not that they actually did. [64] ¶¶ 19, 34 (emphasis added). Accordingly, Quantix has not stated a claim for breach of Section 9.8.

### 3. IC Agreement § 10.1 – Contractor's Operating Expenses

Quantix avers the Gil Defendants have violated Section 10.1 of the IC Agreement by incurring unpaid tolls and truck washing fees, which are Defendants' sole responsibility. [64] ¶¶ 35–38. However, Plaintiff concedes in its response brief that Quantix is responsible for these fees under the IC Agreement. [75] at 8. Additionally, Quantix newly asserts that the Gil Defendants were not following protocols necessary for these costs to pass through to the customers and that

16

unspecified non-compliant conduct (not the failure to pay the costs as alleged) constitutes a breach. *Id.* This new theory is too little too late. The Court will not consider any new facts presented within the briefs. *Agnew*, 683 F.3d at 348. Plaintiff has not plausibly stated a claim for breach of Section 10.1.

### 4. IC Agreement § 13.3 – Return of Trailing Equipment

Section 13.3 requires Gil Transport "to return any [trailer or other unit of trailing equipment provided to Gil Transport by Quantix] in the same good condition as received by [Gil Transport] . . . immediately upon [Quantix]'s request or upon termination of this Agreement." Quantix sufficiently states a claim for breach of this provision. Plaintiff alleges the Gil Defendants did not return Trailer #LS508LD and instead the Defendants worked directly with the lessor of the trailer to secure the sale of the equipment to Sindle. [64] ¶ 40. Defendants argue Quantix has not sufficiently pleaded that it provided the missing trailer to Defendants in the first instance. [67] at 9. But Quantix alleges it leased the trailer and that the trailer was in Defendants' possession. [64] ¶ 40. The Court may reasonably infer that Defendants came into possession of the Quantix-leased trailer because Quantix provided the trailer to them. Thus, Quantix has sufficiently stated a claim for breach of Section 13.3.

### 5. IC Agreement §§ 2.3, 17.2 – Carrier Identification

Under Sections 2.3 of the IC Agreement, the Gil Defendants agreed "to remove all [Quantix] identification" from equipment and either return it or certify its removal on the later of termination of the Agreement or completion of the services provided therein. Additionally, Section 17.2 requires the Gil Defendants to "remove or cover

17

up all [Quantix] identification at the termination of [the] Agreement, or while operating the Equipment for any purpose other than conducting [Quantix]'s business." Plaintiff contends the Defendants have violated these provisions by displaying Quantix's federally-issued DOT number while operating for Sindle. [64] ¶ 31. The Court disagrees with Defendants that this allegation is conclusory. Defendants next argue that Plaintiff has not alleged any damages. [67] at 10. But Quantix is entitled to liquidated damages of $25 per day that its identification is not removed or returned following termination. IC Agreement, Appendix A at A-13. These allegations are sufficient to state a claim for breach of Sections 2.3 and 17.2.

### 6. IC Agreement § 14 – Crashes, Accidents, Incidents, and Claims

Section 14 mandates "[Gil Transport] must immediately report to [Quantix] any crash, collision of the Equipment . . . involving [Gil's Transport]'s operations under this Agreement. If any such occurrence is not reported immediately to [Quantix], [Gil's Transport] . . . [will] reimburse [Quantix] for all expense incurred as a result of the failure." Plaintiff alleges two separate incidents where Gil Transport caused property damage it did not report or pay for. [64] ¶¶ 42–43. Defendants contend the allegations lack sufficient factual content to provide them fair notice of the breach. [67] at 10. The Court disagrees. Quantix alleges the first incident occurred in Odessa, Texas when Defendants damaged the landing gear of a Quantix trailer. [64] ¶ 42. The second incident allegedly occurred on or about April 1, 2025 in Sulphur, Louisiana when Gil Transport damaged a third-party's fence. *Id.* ¶ 43. Plaintiff is not required to plead more than the date, place, and property damaged. Quantix has

18

stated a plausible claim for breach of Section 14.

In sum, Count I is dismissed in part. Quantix has stated a claim for breach of Sections 25.1 (confidentiality), 13.3 (return of equipment), 2.3 and 17.2 (carrier identification), and 14 (reimbursement for damages). Quantix failed to plausibly state a claim for breach of Sections 9.8 (customer specifications) and 10.1 (contractor operating expenses).

### ii. Breach of Fiduciary Duty

In Count II, Quantix contends the Gil Defendants breached their fiduciary duties. [64] ¶¶ 53–67. To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must plead "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). The Gil Defendants argue Quantix has not and cannot plausibly allege they owed a fiduciary duty to Plaintiff. [67] at 11–12.

Under Illinois law, a fiduciary duty can arise pursuant to specific legal relationships, such as principal-agent or "by virtue of circumstances unique to the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, 2016 WL 7409916, at *4 (N.D. Ill. Dec. 22, 2016) (citing *O'Brien v. O'Neill*, 2007 WL 684116, at *4 (N.D. Ill. Feb. 28, 2007)). Here, Quantix asserts a fiduciary duty flows from an agency relationship between Plaintiff and the Gil Defendants. *See* [64] ¶¶ 9, 54–55, 57. But the Gil Defendants contest whether Plaintiff pleaded facts sufficient to establish a principal-agent relationship. [67] at 11–12.

19

Gil Transport's status as an independent contractor does not preclude the existence of a principal-agent relationship as an entity may be both an independent contractor and an agent owing a fiduciary duty. Restatement (Second) of Agency § 14N (1958). However, a "complaint relying on an agency relationship must plead facts that, if proven, could establish the existence of an agency relationship." *Tyler v. Bank of New York Mellon*, 2020 WL 2735367, at \*6 (N.D. Ill. May 26, 2020. A "mere allegation of agency is insufficient." *Id.* Factors relevant to the question of when an independent contractor may act as an agent include the right to terminate the relationship, the nature and character of the work, and the degree of control over the work retained by each party. *Petrovich v. Share Health Plan of Illinois, Inc.*, 719 N.E.2d 756, 772 (Ill. 1999). The "the cardinal consideration is whether [the independent contractor] retains the right to control the manner of doing the work." *Id.*

Quantix fails to allege facts of a principal-agency relationship sufficient to give rise to a fiduciary duty. Instead of asserting how Quantix controlled the manner of the Gil Defendants' work or how the Gil Defendants could legally bind Quantix, Plaintiff focuses on the Gil Defendants' access to confidential information. *See* [75] at 10. But trusting another party to maintain "confidential" information is insufficient to create a fiduciary duty. *Landale*, 2016 WL 7409916, at \*5 (citing *Dolmage v. Combined Ins. Co. of Am.*, 2015 WL 292947, at \*6 (N.D. Ill. Jan. 21, 2015) and *Cooney v. Chicago Public Schools*, 943 N.E.2d 23, 29 (Ill. App. Ct. 1st Dist. 2010)). Because Plaintiff has not plausibly alleged the existence of a principal-agency relationship

20

between the parties, the Court finds Quantix has not sufficiently pleaded a claim for breach of fiduciary duty. Accordingly, Count II is dismissed.

### iii.     Misappropriation under ITSA

In Count III, Plaintiff Quantix alleges the Gil Defendants misappropriated trade secrets in violation of the Illinois Uniform Trade Secrets Act ("ITSA"), 765 ILCS 1065. To state a claim under ITSA, Plaintiff must allege (1) the presence of a trade secret; (2) that was misappropriated; and (3) that the defendant subsequently used in its business. *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1071 (N.D. Ill. 2020) (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992)). To be a protectable trade secret, the at-issue information must be (1) sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from them, and (2) the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Inmar, Inc. v. Vargas*, 2018 WL 6716701, at *3 (N.D. Ill. Dec. 21, 2018).

The Gil Defendants challenge whether this information Quantix alleges they misappropriated constitutes protectable trade secrets. [67] at 12–13. "The existence of a trade secret ordinarily is a question of fact" and, as multiple Circuit Courts have observed, is "one of the most elusive and difficult concepts in the law to define." *Learning Curve Toys, Inc. v. Play Wood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) (quoting *Lear Siegler, inc. v. Ark-Ell Springs. Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)). "[C]ourts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F.Supp.3d 915, 921 (N.D. Ill. 2016) (citation omitted). Thus, "the question of whether certain

21

information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side." *Id.* (citation omitted).

Plaintiff has sufficiently alleged that the confidential information Gil forwarded to his personal email and Sindle contained Quantix's trade secrets. Quantix contends the Gil Defendants misappropriated trade secrets by disclosing a list of Quantix's employees and equipment, its contracts and other business documents, as well as information about customer loads, trucking lanes, equipment, and potential driver candidates. [64] ¶¶ 19, 74–76. Other courts in this district have found similar alleged confidential information to be sufficient to base trade secret claims upon. *See, e.g., 20/20 Foresight, Inc. v. George*, 2021 WL 2823095, at *2 (N.D. Ill. July 7, 2021) (finding "candidate resumes, client company lists, computerized candidate and client company lists, and job orders" satisfied the pleading requirement).

Defendants' arguments to the contrary are unavailing.[8] First, regarding employee lists Defendants overlook Quantix's allegations that it utilizes employee drivers in addition to independent contractors. [64] ¶ 80. Furthermore, the Gil Defendants misstate the law – employee lists are not precluded as trade secrets as a matter of law. *CNA Fin. Corp. v. Loc. 743 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 515 F. Supp. 942, 946 (N.D. Ill. 1981) (acknowledging "it is conceivable that an employee list may contain such extensive

---

[8] The Court agrees with Defendants that not all of the information identified by Plaintiff is confidential or a trade secret. Specifically, Plaintiff's allegations about the missing trailer or equipment do not constitute trade secrets.

22

and detailed information that would so devastate a company if disclosed to the wrong person that it could be characterized as a trade secret"). Defendants can test whether the list of employees allegedly misappropriated includes sufficient information to "devastate" Quantix through discovery. Second, as discussed *supra* in Section III(b)(i)(1), Quantix's allegations regarding disclosure of its contracts and other business documents cannot be construed as limited to the IC Agreement at this stage of litigation. Finally, the Gil Defendants' cases are distinguishable. *See, e.g.*, *Nielsen Consumer LLC v. Circana, LLC*, 2025 WL 815666, at *9 (N.D. Ill. Mar. 13, 2025) (explaining "[plaintiff's] decision to lard its briefs with undefined industry-specific jargon defeats its claim") (cleaned up); *Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*, 1993 WL 358148, at *5 (N.D. Ill. Sept. 14, 1993) (finding allegations about 3000 pages of technical information, including drawings, plans, and specifications about products in the public domain insufficient); *Segerdahl Corp. v. Ferruzza*, 2018 WL 828062, at *3 (N.D. Ill. Feb. 10, 2018) (finding allegations regarding "broad areas of technology" insufficient). Thus, Quantix has stated a plausible claim for violations of ITSA.

### iv. Tortious Interference

In Count IV, Plaintiff Quantix alleges the Gil Defendants committed tortious interference with its business relationships with its drivers and customers. [64] ¶¶ 79–85. To state a claim for tortious interference with business relationship, a plaintiff must allege "(1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018); *HPI Health Care*

23

*Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (1989).

The Gil Defendants argue Quantix has failed to sufficiently allege inducement. [67] at 14–15. The Court disagrees. "Intent to induce 'requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way.'" *Webb*, 906 F.3d at 579 (quoting *In re Estate of Albergo*, 656 N.E.2d 97, 103 (1995) (citation omitted)). Quantix has done so here. As for drivers, Quantix contends Gil solicited a driver to work with him at Sindle during the week of April 21, 2025 by offering the driver a semi-tractor and using Quantix's password-protected company information. [64] ¶ 23. As for customers, Quantix alleges Gil recorded its driver training with his own commentary about Quantix drivers' lack of qualifications so that customers would move with him to Sindle. *Id.* ¶¶ 17, 24. That is sufficient to survive a motion to dismiss.

Finally, the Gil Defendants argue Quantix's tortious interference claim (the only surviving claim relevant to this argument) is preempted by the ITSA. [67] at 15. ITSA states it "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. Thus, for preemption to apply, the common law claim must be based on the misappropriation of allegedly confidential information or trade secrets. *Hecny Trans., Inc. v. Chu*, 430 F.3d 402, 404–05 (7th Cir. 2005) (accepting the "dominant view" that "claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets"). The Gil Defendants argue the tortious interference claim is predicated on Quantix's trade

24

secrets allegations and therefore is preempted. Plaintiff disagrees and asserts that its claim is based on misconduct other than trade secret misappropriation such that preemption under the ITSA does not apply. The Court agrees with Quantix. As described above, Quantix's tortious interference claim is predicated on conduct not involving trade secrets, such as disparaging comments directed at Quantix customers and promises of a semi-tractor. Thus, Quantix's claim for tortious interference survives.

### v. Civil Conspiracy

In Count VII, Plaintiff Quantix alleges Gil, Gil Transport, and Sindle Trucking conspired to effectuate their breach of contract, breach of their fiduciary duties, and misappropriation of Quantix's trade secrets. [64] ¶¶ 101–05. Defendant Sindle is dismissed for lack of personal jurisdiction, thus this claim is asserted against the Gil Defendants alone. As such, Count VII must be dismissed pursuant to the intracorporation conspiracy doctrine, which precludes civil conspiracies between a corporation and its agents, officers, or employees. *Kurt v. Platinum Supplemental Ins., Inc.*, 2021 WL 3109667, at \*11 (N.D. Ill. July 22, 2021). Although there are two exceptions to the doctrine for when corporate employees are shown to be motivated solely by personal bias or when the conspiracy was part of a broader discriminatory pattern or permeated the ranks of the organization's employees, neither of those exceptions are implicated here. *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470–71 (7th Cir. 1993). Accordingly, Count VII is dismissed.

### CONCLUSION

For the stated reasons, Defendant Sindle Trucking's Motion to Dismiss Under

25

Rule 12(b)(2) for lack of personal jurisdiction [68] is granted and Quantix's request for jurisdictional discovery is denied. All claims against Sindle Trucking are dismissed. Additionally, for the stated reasons, Defendants Gil and Gil Transport's Motion to Dismiss under Rule 12(b)(6) [66] is granted in part and denied in part. Count I survives as to claims for breach of Sections 2.3, 13.3, 14, 17.2, and 25.1. Counts III and IV survive. Count I is dismissed as to a claim for breach of Sections 9.8 and 10.1 and Counts II and VII are also dismissed.

E N T E R:

Dated: March 30, 2026

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

26